WESTERN UNION TEL. CO. v. POE et al.

(Circuit Court of Appeals, Sixth Circuit. July 15, 1895.)

No. 323.

CONSTITUTIONAL LAW—TAXATION OF TELEGRAPH COMPANIES—SANFORD v. POE, 69 FED. 546, FOLLOWED.

Appeal from the Circuit Court of the United States for the Eastern Division of the Southern District of Ohio.

Ramsey, Maxwell & Ramsey, for plaintiff.

J. K. Richards, Atty. Gen., and Thos. McDougall, for defendants.

Before LURTON, Circuit Judge, and HAMMOND and SEVERENS, District Judges.

LURTON, Circuit Judge. This is one of a series of bills filed by corporations of states other than Ohio to enjoin assessments for taxation under a law of Ohio, passed April 27, 1893, and known as the "Nichols Law," for the taxation of telegraph, telephone, and express companies. The facts averred in this suit are substantially like those stated and considered in the opinion of this court filed at this term in the case of Sanford v. Poe, 69 Fed. 546, except that the complainant is a telegraph company, while the suits disposed of by the opinion referred to were the suits of express companies.

Complainant avers that the entire value of its property in the state of Ohio, May 1, 1893, did not exceed $647,000, and that it has been assessed for 1893 on a valuation of $2,011,076.45, "wrongfully pretending that said sum is named as being the value of its property in the state of Ohio." The bill avers that the complainant is the owner of lines of Atlantic cable extending to Cuba and to England, and connecting in England with lines of other companies extending to all parts of Europe, and lines in Canada; and that the total number of miles of lines owned or operated by it is 189,576; and that the length of its mileage in Ohio is 8,272. It further states that:

"The cash value of its property cannot be ascertained, even approximately, by applying the proportion which its lines in Ohio bear to the whole number of miles owned or operated by it, upon a valuation of all the shares of its capital stock, because such valuation includes elements of value not existing within the state of Ohio, and not taxable within said state, and some of which are not taxable at all, and because the lines owned and operated by it are not of uniform value per mile, either as to gross or net income earned upon the various lines, or as to the cost of construction and maintenance. Your orator owns thousands of miles of ocean cable, which cost about $4,000 per mile, while the ordinary cost of the lines in Ohio is about $103.60 per mile. The cost of the company's lines in the more densely-settled portions of the country, as in Massachusetts, New York, Pennsylvania, and New Jersey, where also the company's trunk lines are larger, is very much greater than in Ohio. The income arising from the conduct of your orator's business is much greater in many of the states, per mile of line, than in the state of Ohio, and the average income per mile in the entire system is very much greater than that of the lines in Ohio. Your orator further shows that the market price of its stock affords no fair, reasonable, or just method of forming an opinion as to the value of its property, or of fixing a basis of value for the taxation thereof, inasmuch as the said market price is speculative and variable, and is dependent upon financial and other conditions

not at all connected with your orator, its business, or its property, while the actual value of its shares is made up of property of various kinds, in various states, and of valuable contracts with railroad companies and other companies and individuals; of franchises granted by the government of the United States by the act of July 24, 1866; of franchises granted by other states, and municipalities in them, and by foreign governments; of patent rights; of business experience, good will, and skill employed in the prosecution of its business; of investments in bonds and stocks of other corporations, aggregating $7,633,230.12, and large investments in real estate in New York City and Chicago, and in other cities and towns outside of Ohio, aggregating more than five millions of dollars in value."

The bill then charges:

"That while, by the terms of said law, the appraisement made by said board is designated as an appraisement of the value of the property of express, telegraph, and telephone companies in the state of Ohio, it is not such in fact, but is, in truth, an attempt to levy a tax against such companies, including your orator, for the privilege of doing business in the state of Ohio; that the property of all individuals in Ohio, and of all companies in said state, other than express, telegraph, and telephone companies, is assessed in said state by ascertaining its true value, by uniform rule, as required by the constitution of said state, and that the property of the said companies should be assessed in the same manner, that is to say, by a verified return of such property in each county in which any part thereof is situated, such return setting forth the designation, amount, and value of said property; that the property of your orator in said state is of the simplest character, plainly open to observation and investigation as to its value, consisting only of poles, wires, instruments, and office furniture used in telegraphy, and there is no just or lawful reason for assessing its property in any mode or manner other than that employed generally under the laws of said state. And your orator further says that an attempt to fix a value upon its poles, wires, instruments, and office furniture by consideration of the property which it owns and the advantages which it enjoys and the business which it does in other states and countries is unjust, unfair, oppressive, and is not permissible under the constitution of Ohio and that of the United States."

By amendment, two affidavits of defendant Poe, concerning the procedure of the board in arriving at the valuation for assessment, were incorporated as amendments to the original bill. Included in this amendment is the minute of the board containing its finding of facts and conclusion as to the value of the plant of the complainant company in Ohio, from which it appears that on May 1, 1893, the capital stock of the Western Union Telegraph Company was $94,000,820, the par value of its shares was $100 each, and the market value $87; that the value of the entire capital stock was on that day $81,780,713.40. The assessors then deducted from this total valuation $7,633,230.12, the value of stocks and bonds of other corporations owned by complainant, and also deducted $5,013,326.64, the value of real estate owned by it outside of Ohio, leaving $69,134,-156.64 as the value of the lines owned or operated by it. The board further found that the whole length in miles of the lines of said company, both within and without the state, was 189,576, and the length of such lines in Ohio was 8,272 miles. The minute concludes as follows:

"That the proportion of the entire value of the capital stock of said company employed in business in Ohio, and represented by property taxable therein, was, on said first day of May, 1893, $\frac{8272}{189576}$ of $69,134,156.64, which equals $3,016,614.67. On consideration of the foregoing, the fact that property generally in Ohio is taxed at not more than two-thirds of its actual

value, the statement in the return of the company that to reproduce the lines in this state will cost the sum of $1,649,279.10 (which the board regards as an insufficient estimate, and, at any rate, much below the existing value of said lines as an entirety), and other facts and evidence contained in the return of the company and otherwise brought to the attention of the board, on motion the board unanimously fix and determine the value of the property of the Western Union Telegraph Company in the state of Ohio to be assessed and taxed therein at the sum of $2,011,076.45."

There is no averment that the defendants were guilty of any fraudulent purpose in making the valuation complained of as excessive.

The circuit judge, after overruling the demurrer filed by the defendants upon the ground that the Nichols law contravened the constitution of Ohio, and was therefore void, subsequently granted a rehearing, the supreme court of Ohio having in the meantime decided that the Nichols law was valid, and not obnoxious to any provision of the constitution of Ohio. See State v. Jones, 37 N. E. 945. Upon this rehearing the circuit court sustained the demurrers of defendants and dismissed the bill. The opinions of Judge Taft are reported in 64 Fed. 9, and 61 Fed. 449.

From this statement of the facts it is evident that the case of this complainant is completely controlled by the opinion of this court in the case, already referred to, of Sanford v. Poe, which was heard along with the present suit; and the case of Western Union Tel. Co. v. Massachusetts, 125 U. S. 530, 8 Sup. Ct. 961. It is accordingly ordered that the decree of the circuit court dismissing the bill of the present complainant be affirmed.